UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JON BOULEY,<br>    **Plaintiff** | CASE NO: |
| v. | TRIAL BY JURY<br>DEMANDED |
| HOFFMAN OF SIMSBURY, INC., d/b/a<br>HOFFMAN HONDA,<br>WILLIAM MALDONADO, and<br>AMERICAN HONDA FINANCE CORP.,<br>    **Defendants** | COMPLAINT<br><br>JANUARY 12, 2010 |

## I. INTRODUCTION

1. This is a suit brought pursuant to the Consumer Leasing Act, the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*,

## 2. II. PARTIES

3. The Plaintiff, Jon Bouley, is a consumer residing in Coventry, Connecticut.

4. The defendant Hoffman of Simsbury, Inc. d/b/a Hoffman Honda ("Hoffman") is a Connecticut corporation that operates a new and used car dealership in Simsbury, Connecticut.

5. The defendant William Maldonado is believed to be a Connecticut resident and was at all relevant times an employee of Hoffman.

6. The defendant American Honda Finance Corporation ("Honda") is a California corporation with its principal place of business in that state.

## III. JURISDICTION

7. Jurisdiction of this court arises under 15 U.S.C. § 1679g, 15 U.S.C. § 1640(3), and 28 U.S.C. §1337.

8. This Court has jurisdiction over the defendants, because they regularly transact business in Connecticut.

9. Venue in this Court is proper, because the actions complained of occurred in this state.

## IV. FACTUAL ALLEGATIONS

10. Plaintiff has limited education and has not graduated from high school and has not obtained a General Equivalency Diploma. He is self-employed as a painter and handy man.

11. Plaintiff has two minor children who reside in Glastonbury, CT, and he needs reliable transportation for the frequent trips between Coventry and Glastonbury, which require approximately 50 miles of driving roundtrip.

12. In late March or April 2009, Plaintiff saw a television advertisement offering to finance motor vehicle purchases by individuals with credit problems for monthly payments only $99 (the "Promotion).

13. Plaintiff called the telephone number on the advertisement and spoke with an individual who is believed to be an employee or a contractor of either Hoffman or or one of its affiliated companies, or an independent company with whom Hoffman or one of its affiliated company contracted for promotional services.

14. This individual told Plaintiff to go Hoffman in order to take advantage of the Promotion.

2

15. Plaintiff went to Hoffman and spoke with Maldonado in April 2009, telling him that he had come in response to the advertisement and that he wanted to take advantage of the Promotion.

16. Plaintiff informed Maldonado about his child custody situation and that he needed a car for purposes of driving back and forth between Coventry and Glastonbury with his children and that he would be putting many miles on the vehicle.

17. Maldonado told Plaintiff that he could purchase a suitable vehicle under the Promotion, and Maldonado showed Plaintiff various motor vehicles, including a new 2009 Honda Civic Sedan (the "Vehicle").

18. Plaintiff was skeptical about whether Hoffman would be able to purchase a new vehicle under the Promotion with such low payments.

19. Maldonado assured Plaintiff that Hoffman had people there who were doing this under "special financing" as part of the Promotion and that Plaintiff would be able to purchase a new Honda.

20. Maldonado asked Plaintiff how much he could make for a down payment, and Plaintiff informed Maldonado that he was unable to make a down payment at that time.

21. Maldonado told Plaintiff that he would need to make a $150 down payment and that he could pay it later, but that he would have to make the payment in cash.

22. Maldonado presented paperwork for Plaintiff to sign for the Vehicle (the "Contract").

23. The Contract was a lease.

24. The Federal Consumer Leasing Disclosures on the Contract showed that the amount due at lease signing was $1,312.97, although no such payment was requested

by Maldonado or any other Hoffman representative, and Plaintiff did not pay that amount.

25. Plaintiff saw the term "lease" on the Contract, and he asked Maldonado if the Contract was a lease.

26. Maldonado assured Plaintiff that he was purchasing the Vehicle under "special financing" and that the Contract was not a lease.

27. Plaintiff also saw that the monthly payments on the Contract were $422.75, and he asked questioned Maldonado about why the monthly payments were not going to be $99 in accordance with the Promotion.

28. Maldonado told Plaintiff that, because of Plaintiff's credit, they were unable to set the payments $99 at that time but, after Plaintiff made payments on the Contract for six months, his credit would improve and he would be able to return to Hoffman and refinance the purchase with lower monthly payments.

29. Plaintiff believed Maldonado's representations concerning the Contract, and he signed the Contract and took delivery of the Vehicle.

30. Later, Plaintiff showed the Contract to his sister, who informed Plaintiff that the Contract was a lease and that he was only allowed 12,000 miles per year and would be charged $.15/mile for excess miles.

31. Plaintiff's intended use of the Vehicle, which use was disclosed to Maldonado, requires that he drive substantially in excess of 12,000 miles per year.

32. Plaintiff later learned that the Contract included a charge ostensibly for a service contract at a price of $1,898 that was not requested by Plaintiff and which was never provided to him.

33. Hoffman subsequently assigned the Contract to Honda.

## V. COUNT ONE:
### VIOLATION OF CREDIT REPAIR ORGANIZATIONS ACT
### (HOFFMAN AND MALDONADO ONLY)

34. Paragraphs 1-33 are incorporated.

35. Hoffman made statements to Honda and perhaps other finance companies that were untrue and misleading and which Maldonado knew, and which Hoffman, in the exercise of reasonable care, would have known, were untrue and misleading, with respect to Plaintiff's creditworthiness for purposes of persuading Wells Fargo and perhaps others to extend credit to the Plaintiff by accepting the assignment of the Contract or otherwise providing financing to Plaintiff.

36. Hoffman and Maldonado made false and deceptive statements to Plaintiff concerning the impact of making payments on the Contract upon his credit as an inducement to sell the Vehicle.

37. Hoffman and Maldonado violated the Credit Repair Organization Act ("CROA") 15 U.S.C. § 1679b(a)(1)(B).

38. Hoffman and Maldonado are to Plaintiff for his actual damages, punitive damages, and attorney's fees pursuant to CROA § 1679g(a).

## VI. COUNT TWO:
### VIOLATION OF CONSUMER LEASING ACT PRACTICES ACT (HOFFMAN ONLY)

39. Paragraphs 1 – 33 are incorporated.

40. Hoffman failed to make the disclosures required by 15 U.S.C. § 1667a, which failures include but are not limited to, one or more of the following:

    a. It did not accurately disclose the amount of any payment by the lessee required at the inception of the lease; and

    b. It did not disclose the $150 payment that Plaintiff agreed to make following the inception of the lease; and

    c. It included a service contract that was not delivered to Plaintiff.

41. Hoffman is liable to Plaintiff pursuant to 15 U.S.C. § 1667d and 15 U.S.C. § 1640.

## VII.  COUNT THREE:
### VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (HOFFMAN AND MALDONADO ONLY)

42. Paragraphs 1 – 41 are incorporated.

43. Maldonado and Hoffman have engaged in unfair and deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110a et seq., and they are liable to Plaintiff pursuant to Conn. Gen. Stat. § 42-110d.

## VIII.  COUNT FOUR:
### ASSSIGNEE LIABILITY UNDER CONN. GEN. STAT § 42-411(b)
### (HOFFMAN ONLY)

44. Plaintiffs 1-42 are incorporated.

45. Honda, as the assignee of the Contract, is subject to all claims or defenses that could be asserted against Hoffman as the originator of the Contract.

46. Plaintiff is entitled to an order rescinding the Contract and to damages.

**WHEREFORE**, Plaintiff prays for the following relief: Actual damages, punitive damages, attorney's fees, costs, and an order declaring the Contract rescinded.

**PLAINTIFF, JON BOULEY**

By: _____
Daniel S. Blinn    ct02188
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Road; Suite 512
Rocky Hill, CT  06067
Tel  (860) 571-0408   Fax (860) 571-7457